UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHELLE MAIO,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case # 19-CV-6402-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiff Michelle Maio brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 14. For the reasons that follow, the Commissioner's motion is DENIED, Maio's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

In November 2012, Maio applied for SSI under Title XVI of the Act with the Social Security Administration (the "SSA"). Tr.[1] 17, 69. She alleged disability due to lupus, fibromyalgia, rheumatoid arthritis, migraine headaches, Raynaud's Syndrome, Hashimoto's Thyroiditis, chronic fear, post-traumatic stress disorder, depression, bulging disc, and asthma. Tr. 15, 69. Following a hearing, an Administrative Law Judge issued a decision on June 24, 2015 finding that Maio was

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

not disabled. Tr. 17–31. Maio appealed the final decision of the Commissioner to this Court. The Honorable Marian W. Payson, United States Magistrate Judge, reversed the Commissioner's decision and remanded the matter to the Commissioner for further proceedings. Tr. 657–68; *Maio v. Colvin*, No. 17-CV-6049, 2018 WL 1180224 (W.D.N.Y. Mar. 7, 2018).

Upon remand, the Appeals Council vacated the June 24, 2015 decision and remanded the matter to an Administrative Law Judge. Tr. 669–71. In February 2019, Maio and a vocational expert appeared at a hearing before Administrative Law Judge David Romeo (the "ALJ"). Tr. 568, 580. On March 25, 2019, the ALJ issued a decision finding that Maio was not disabled from her application date up to her attainment of "advanced age," which became the final decision of the Commissioner. Tr. 568–80. This action seeks review of the Commissioner's final decision regarding the period between her application date and her attainment of advanced age. ECF No. 1.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted). The Act holds that the Commissioner's findings as to any fact shall be "conclusive" if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether [claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted).

**II.     Disability Determination**

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(a)(4)(ii), (c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 416.920(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(a)(4)(v), (g). To do so, the Commissioner

must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Maio's claim for benefits using the process described above. At step one, the ALJ found that Maio had not engaged in any substantial gainful activity since her application date. Tr. 570. At step two, the ALJ found that Maio had a panoply of severe impairments: migraines, fibromyalgia, a history of bilateral uni-compartmental knee replacements, localized primary osteoarthrosis of the carpometacarpal joints of both upper extremities, posttraumatic stress disorder, anxiety, hypothyroidism, and major depressive disorder. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 571.

Next, the ALJ determined that Maio had the RFC to perform light work with additional, specific limitations. Tr. 573. Specifically, the ALJ found that Maio could: work at a consistent pace throughout the workday but not at a production rate pace where each task must be completed within a strict timeframe; tolerate occasional interaction with coworkers, supervisors, and the public; tolerate occasional changes in work setting; tolerate a low level of work pressure, which the ALJ defined as work not requiring multitasking, very detailed job tasks, significant independent judgment, very short deadlines, or teamwork in completing job tasks; tolerate occasional exposure to weather, extreme heat, extreme cold, wetness, humidity, vibration, and atmospheric conditions; "tolerate moderate noise intensity level as defined in the *Dictionary of*

*Occupational Titles / Selected Characteristics of Occupations*"; tolerate occasional exposure to light brighter than that typically found in an indoor work environment such as an office or retail store; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and frequently reach, handle, finger, and feel with both upper extremities. *Id.* The ALJ further found that Maio could not: climb ropes, ladders, or scaffolds. *Id.* Finally, the ALJ found that Maio was limited to occasional operation of foot controls. *Id.* At steps four and five, the ALJ found that Maio could not perform her past relevant work but, between her application date and her attainment of "advanced age," there were jobs that existed in significant numbers in the national economy that she could perform. Tr. 577–78. The ALJ therefore found that Maio had not been disabled from her application date to her attainment of "advanced age." Tr. 579.

**II.   Analysis**

Maio argues that the ALJ's determination that she could perform light work was not supported by a competent medical opinion. ECF No. 8-1 at 12–20.[2] The Court agrees.

An RFC determination does not have to "perfectly correspond" with the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). But "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015). In other words, an ALJ's ability to make inferences about the functional limitations caused by an impairment does

---

[2] Maio also argues for reversal of the Commissioner's decision based on several other grounds. ECF No. 8-1 at 20–25. The Court declines to address those arguments because remand is appropriate based on the ALJ's failure to ground his RFC assessment with competent medical opinion.

not extend beyond that of an ordinary layperson. *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) ("While an ALJ may render common sense judgments about functional capacity, she must avoid the temptation to play doctor." (internal quotation marks and brackets omitted)).

      Here, the ALJ found that Maio had myriad medically determinable impairments that "significantly limit [her] ability to perform basic work activities." Tr. 570. In his RFC analysis, the ALJ found that, despite these impairments, Maio was capable of performing light work with additional, highly specific restrictions. Tr. 573. Of particular concern, the ALJ's assessment of "light" work means that he concluded Mario was capable of "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," 20 C.F.R. § 416.967(b), but Maio testified that she has difficulty lifting and specifically mentioned an inability to lift a twelve-pound baby, Tr. 608–10. The ALJ failed to adequately support his contrary determination that Maio was capable of such exertion. Tr. 573–77.

      The ALJ claimed to give "some" weight to the opinion of consultative examiner, Look Persaud, M.D. Tr. 575, 281–86. At the consultative exam, Dr. Persaud reported that Maio appeared to be in no acute distress, had a normal gait, was able to fully squat (but was unable to get back up), had a normal stance, used no assistive devices, needed no help changing for exam or getting on and off the exam table, and was able to rise from her chair without difficulty. Tr. 284. He also observed that it was painful for Maio to walk tiptoe—she complained of pain in her feet and toes. *Id.* He observed that Maio did not have scoliosis, kyphosis, or abnormality in her thoracic spine; that her joints were stable and nontender; and that she displayed no redness, heat, swelling, or effusion. Tr. 285 He noted that her cervical spine showed limited and painful range of motion (although he did not observe any spasm); she had full, but painful, range of motion in her

6

thoracolumbar spine, shoulders, hips, and knees; and she had fourteen trigger points involving her neck in the occipital area, upper back, shoulders, elbows, lower back, hips, and knees. Tr. 284–85.

Dr. Persaud diagnosed Maio with fibromyalgia, systemic lupus, migraine headaches, and hypothyroidism with Hashimoto's disease. Tr. 285. He opined that Maio had no restrictions for sitting, standing, or walking on even surfaces; for fine motor activity using her hands; for speaking, seeing, or hearing; or for traveling via public transportation. Tr. 285–86. However, he opined that she had mild restrictions kneeling, crawling, reaching in all planes, bending, twisting, and turning; mild to moderate restrictions squatting; moderate restriction walking on uneven terrain, up inclines, ramps, and stairs due to pain from her fibromyalgia involving her back, hips, knees, and feet; and moderate to marked restrictions lifting, carrying, pushing, and pulling. *Id.*

The ALJ claimed that, "while some limitations in lifting, carrying, pushing, and pulling are supported by the evidence, moderate to marked limitations are only supported by [Maio]'s subjective complaints." Tr. 575.[3] The ALJ claimed that Dr. Persaud's findings in that area were not supported by either his examination or the treatment record. *Id.* Accordingly, despite claiming to give the opinion "some" weight, the ALJ clearly rejected Dr. Persaud's opinion regarding Maio's capacity to lift, carry, push, and pull. *See York v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 259, 261–62 (W.D.N.Y. 2019) (holding that, although ALJ gave "partial" weight to "the only medical opinion evidence of record," the ALJ's rejection of the opinion in relevant part meant that the ALJ's RFC assessment was "not supported by substantial evidence").

Here, aside from Dr. Persaud's opinion, there is no medical opinion regarding Maio's capacity to lift, carry, push, and pull. Absent other medical evidence of a claimant's functional

---

[3] Even assuming Dr. Persaud relied partially on Maio's subjective complaints, that fact would "hardly undermine[] his opinion as to her functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (internal quotation marks and brackets omitted).

7

limitations, an ALJ's rejection of all relevant medical opinions in the record creates "an evidentiary gap in the record requiring remand." *Zayas v. Colvin*, No. 15-CV-6312, 2016 WL 1761959, at *4 (W.D.N.Y. May 2, 2016); *see also Garrett v. Comm'r of Soc. Sec.*, No. 17-CV-1009, 2019 WL 2163699, at *5 (W.D.N.Y. May 17, 2019) ("By not assigning significant weight to any opinions and, instead, assigning them only limited weight, the ALJ created an evidentiary gap in the record requiring remand."); *Defrancesco v. Berryhill*, No. 16-CV-6575, 2017 WL 4769004, at *4 (W.D.N.Y. Oct. 23, 2017) (holding that ALJ giving "little weight" to "the only physical medical opinion in the record created an evidentiary gap that require[d] remand"). Here, the ALJ rejected the only relevant medical opinion and created such an evidentiary gap.

The Commissioner argues that the ALJ was entitled to accept portions of Dr. Persaud's opinion while rejecting other portions of the opinion. ECF No. 14-1 at 22–23. While the ALJ is certainly permitted to resolve "the evidence to accept parts of a doctor's opinion and to reject others," *Townsend v. Berryhill*, No. 16-CV-406, 2017 WL 5375038, at *3 (W.D.N.Y. Nov. 14, 2017), the ALJ is prohibited from rejecting all opinion evidence and "playing doctor." *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 292 (W.D.N.Y. 2018) (internal quotation marks omitted). In *Townsend*, although the ALJ only afforded the relevant medical opinion "some weight," the opinion ultimately supported the ALJ's assessment of light work. 2017 WL 5375038, at *3. Here, however, the ALJ's analysis makes clear that he believed his assessment of light work was contradicted by Dr. Persaud's opinion that Maio was moderately to markedly limited lifting, carrying, pushing, and pulling. Tr. 575–76.[4]

---

[4] As explained by Judge Payson, if the ALJ had accepted Dr. Persaud's opinion, the ALJ should have explained "how that opinion—which assesses moderate to marked limitations for lifting, carrying, pushing and pulling—supports the conclusion that Maio is able to perform the exertional requirements of light work." Tr. 667; *Maio*, 2018 WL 1180224, at *5. But on remand, instead of accepting that portion of Dr. Persaud's opinion and providing such an explanation, the ALJ elected to reject that portion of Dr. Persaud's opinion.

Instead of accepting Dr. Persaud's opinion, the ALJ opines that Maio's ability to do the lifting, carrying, pushing, and pulling associated with light work is demonstrated by Dr. Persaud's observations of: normal range of motion in her thoracolumbar spine, shoulders, hip, and knees; full strength in her upper and lower extremities; her normal gait and stance with no assistive device; and her ability to do transfers unassisted. Tr. 575–76. It is unclear to the Court how those observations demonstrate Maio's ability to "lift[] no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b); *see Sinopoli v. Berryhill*, No. 18-CV-6558, 2019 WL 3741051, at *10 (S.D.N.Y. May 31, 2019) ("[T]here is no indicator that 'intact strength' means that Plaintiff can carry and lift 20 pounds."). "[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Wilson*, 2015 WL 1003933, at *21. This is particularly true here where the ALJ found that Maio suffers from numerous impairments, including fibromyalgia, which can be "a disabling impairment" for which "there are no objective tests which can conclusively confirm the disease." *Green-Younger v. Barnhart*, 335 F.3d 99, 108–09 (2d Cir. 2003) (noting that "physical examinations . . . yield[ing] normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions"—"[are] no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced" (internal quotation marks omitted)). "[G]iven the lack of any competent medical opinion, the Court, like the ALJ, is not in a position to assess the extent of functional limitation posed by [Maio]'s impairments." *Agostino*, 2020 WL 95421, at *4.

The Court acknowledges that in some circumstances it is appropriate for an ALJ to make an RFC finding without relying on a medical opinion, particularly where the record contains sufficient evidence from which the ALJ could assess a claimant's RFC. *See, e.g.*, *Trepanier v.*

9

*Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 78–79 (2d Cir. 2018) (summary order) (upholding an ALJ's determination that claimant could lift up to fifty pounds where no medical opinion supported that conclusion but evidence in the record, such as the claimant's treating physician clearing him to return to work that would require him to lift up to fifty pounds, "strongly" suggested that capacity). Here, however, the ALJ fails to identify evidence that reasonably suggests Maio is capable of meeting the exertional requirements of light work. *Compare Doney v. Astrue*, 485 F. App'x 163, 165 (9th Cir. 2012) (noting that an ALJ may make reasonable inferences from a claimant's reports of daily activities), *with Agostino*, 2020 WL 95421, at *3 ("It is simply not a common-sense inference that [the claimant]'s lumbar and knee problems, in conjunction with her obesity, would render her able to stand for 45 minutes at a time so long as she could sit for one to two minutes. That is a more complex medical determination that requires a level of expertise that the ALJ does not have.").

In short, in formulating Maio's RFC, the ALJ failed to rely on any medical opinion that could bridge the gap between clinical findings and specific functional limitations. It is clearly established that "the ALJ may not interpret raw medical data in functional terms." *Johnson*, 351 F. Supp. 3d at 293 (internal quotation marks omitted). That is what the ALJ did here. Accordingly, remand is warranted for further development of the record.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 14, is DENIED and Maio's Motion for Judgment on the Pleadings, ECF No. 8, is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 28, 2020
      Rochester, New York

                                        HON. FRANK P. GERACI, JR.
                                        Chief Judge
                                        United States District Court